UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Wheeling & Lake Erie Railway Company, ) | |
| ) | CASE NO. 5:13CV2105 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE JOHN R. ADAMS |
| ) | |
| Brotherhood of Locomotive Engineers and ) | ORDER |
| Trainmen, et al., ) | |
| ) | |
| Defendants. ) | |

Pending before the Court is Plaintiff Wheeling & Lake Erie Railway Company's ("WLE") motion for a preliminary injunction.  By agreement, there exists a temporary restraining order, enjoining any work-stoppage or any other form of self-help by Defendants over this dispute.  The agreement is premised upon WLE's agreement to forego the use of any non-union employees as conductors or trainmen during the duration of the TRO.

On October 11, 2013, the Court held oral argument on WLE's request for a preliminary injunction.  The Court hereby GRANTS the request for a preliminary injunction for the reasons that follow.

The United States Supreme Court has addressed the law surrounding this area as follows:

A minor dispute in the railroad industry is subject to compulsory and binding arbitration before the National Railroad Adjustment Board, § 3, or before an adjustment board established by the employer and the unions representing the employees§ 3 Second. The Board (as we shall refer to any adjustment board under the RLA) has exclusive jurisdiction over minor disputes. Judicial review of the arbitral decision is limited. Courts may enjoin strikes arising out of minor disputes. Although courts in some circumstances may condition the granting of a strike injunction on a requirement that the employer maintain the status quo pending Board resolution of the dispute, this Court never has recognized a general statutory obligation on the part of an employer to maintain the status quo pending the Board's decision

…

> To an extent, then, the distinction between major and minor disputes is a matter of pleading. The party who initiates a dispute takes the first step toward categorizing the dispute when it chooses whether to assert an existing contractual right to take or to resist the action in question. But the Courts of Appeals early recognized that there is a danger in leaving the characterization of the dispute solely in the hands of one party. In a situation in which the party asserting a contractual basis for its claim is "insincere" in so doing, or its "position [is] founded upon ... insubstantial grounds," the result of honoring that party's characterization would be to undercut "the prohibitions of § 2, Seventh, and § 6 of the Act" against unilateral imposition of new contractual terms. In such circumstances, protection of the proper functioning of the statutory scheme requires the court to substitute its characterization for that of the claimant.
>
> To satisfy this need for some degree of judicial control, the Courts of Appeals uniformly have established some variant of the standard employed by the Third Circuit in this case:
>
> If the disputed action of one of the parties can "arguably" be justified by the existing agreement or, in somewhat different statement, if the contention that the labor contract sanctions the disputed action is not "obviously insubstantial", the controversy is a minor dispute within the exclusive province of the National Railroad Adjustment Board.
>
> Verbal formulations of this standard have differed over time and among the Circuits: phrases such as "not arguably justified," "obviously insubstantial," "spurious," and "frivolous" have been employed. These locutions are essentially the same in their result. They illustrate the relatively light burden which the railroad must bear in establishing exclusive arbitral jurisdiction under the RLA.

*Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 303- 307 (1989) (citations, quotations, alterations, and footnotes omitted).   In essence, the test can be boiled down to two sentences:   "Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement. Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major."   *Id.* at 307.

Under the test set forth above, at this stage of the proceeding, the Court finds that WLE has

met its "relatively light burden" of demonstrating that this is a minor dispute.  WLE has shown through the verified complaint that the core of the dispute centers upon whether it may utilize supervisors to operate trains when engineers and trainmen covered by their respective collective bargaining agreements are unavailable due to statutory restrictions.  Based upon the information currently before the Court, it finds that WLE's position is "arguably justified" by the respective CBAs and therefore a minor dispute.  Accordingly, enjoining the work stoppage is appropriate.

In order to review whether relief is appropriate, the Court must examine the language of two distinct collective bargaining agreements.  The engineer agreement contains the following relevant provision:

> (i)  The BLET recognizes the unique concept in regional railroading of being able to provide immediate service to their customers on short notice. In recognition of this concept, the  BLET is agreeable to Carrier officials and management providing service, without restriction,  when the Carrier deems that reasonable attempts, as described in Articles 10 (f) and 11 (b) are complied with, to acquire manpower are exhausted and the service is related to an emergency or is incidental or performed to expedite service.  (Carried over from the 1993 Agreement.)

Doc. 1-1 at 4.  The Court finds that the above provision clearly provides some level of discretion to WLE to use supervisors and management as engineers.  Moreover, the Court finds that under the facts presented there is room for reasonable debate over whether WLE in fact properly utilized that discretion when it chose to use management and supervisors.  Accordingly, WLE's position is arguably justified by the language in the engineer agreement.

The conductor/trainmen agreement, however, contains no similar provision.  Instead, the conductor agreement contains solely the following:

> (h)    i.  The crew consist of all assignments (regular or extra) shall consist of not less than one (1) conductor and one (1) brakeman, except as otherwise provided for under paragraph (ii) hereof.
>
> (Exceptions:   No conductor or brakeman shall be called for light engines or engine

changers.)

      ii. The Carrier may operate conductor only assignments at its own discretion. In the event a conductor works without a brakeman he shall receive a special allowance of ten dollars for each complete tour of duty.

      iii. The Carrier is not prohibited from operating crews with a greater number of trainmen if it so desires.

Doc. 1-2 at 3-4. From the above, BLET contends that the language of the crew-consist provision is straightforward and unambiguous: every crew **shall** consist of a conductor. In contrast, WLE contends that the conductor agreement does not speak at all to the occasion when no conductor is available, thereby leaving WLE its previously-held discretion to make management decisions as necessary.

Upon review of the authorities relied upon by the parties and the argument presented by counsel, the Court finds that WLE has shown an arguable basis within the conductor agreement for its position. Moreover, in reaching this decision the Court has been mindful of the underlying purpose of the Railway Labor Act. Enacted in 1926, the Railway Labor Act was designed to "avoid any interruption to commerce or to the operation of any [railroad] engaged therein" caused by labor-management disputes. 45 U.S.C. § 151a(1); see also H.R.Rep. No. 328, at 1 (1926) (noting that the Act would ensure "continuity and efficiency of interstate transportation service, and [ ] protect the public from the injuries and losses consequent upon any impairment or interruption of interstate commerce through failures of managers and employees to settle peaceably their controversies").

Herein, BLET has been unable to explain what *should* occur to avoid interruption of service in the event that a conductor is not available. The sole response appears to be that this situation should simply be avoided by hiring/maintaining a proper number of union conductors.

While WLE has presented evidence that is in fact hiring more employees to reduce the chances of these shortages occurring, the Court cannot conclude that BLET's proposed solution is the sole solution contemplated by the conductor agreement. Instead, taking into account the fact that business needs are bound to fluctuate and that hour restrictions have only grown over time, it is simply not feasible to conclude that WLE has *no discretion* when no conductor is available. Instead, the Court finds that WLE has demonstrated that the **lack of a restriction** in the conductor agreement arguably justifies its position that it may use non-union individuals as conductors under certain circumstances.

Based upon the above, the Court finds that the issuance of a preliminary injunction is warranted. The prior restrictions imposed on BLET by the Court's TRO shall remain in place by virtue of a preliminary injunction.

IT IS SO ORDERED.


October 22, 2013                                  */s/ John R. Adams*
Dated                                             JUDGE JOHN R. ADAMS
                                                  United States District Judge